**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DORION HOLBROOK,<br><br>Plaintiff,<br><br>v.<br><br>DARRELL JAMES GABRIEL, WERNER ENTERPRISES, INC., and JOHN DOE CORPORATIONS 1-3,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>1:23-cv-04740-TWT |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTION TO DEFENDANTS' NOTICE OF FAULT OF A NON-PARTY**

COME NOW, Defendants in the above-styled action, and hereby respond to Plaintiff's Objection to Defendants' Notice of Fault of a Non-Party, as follows:

## FACTS

This case arises from a motor vehicle accident which occurred on August 10, 2022. Throughout the course of discovery, Plaintiff produced his medical records in relation to his alleged injuries and damages. Having reviewed the medical records, Defendants discovered that two of Plaintiff's medical providers, Dr. V. K. Puppala,

MD ("Dr. Puppala") and Dr. Ali Badday, MD ("Dr. Badday"), deviated from the standard of care.

Specifically, Dr. Puppala, a pain doctor, performed an unnecessary surgery on an unaffected region of Plaintiff's spine, which resulted in a severe spinal infection and required significant additional treatment which, but for Plaintiff's treating physician deviating from the standard of care by performing unnecessary treatments, would not have occurred. *See* Deposition of Dr. Serge Ouanounou, MD, filed contemporaneously herewith (hereinafter "Dr. Ouanounou Depo."), at 17:24-25, 18:1-6, 23:16-21; *see also* Doc. 53-1 at 10 – Expert Report of Dr. John Heller, MD. In conjunction with Dr. Puppala causing Plaintiff to suffer a severe spinal infection, Dr. Badday, a radiologist, deviated from the standard of care by failing to identify the features of discitis which caused substantial damage to Plaintiff's physical wellbeing, including causing the development of a significant spinal infection, which resulted in permanent damages to Plaintiff and required additional treatment unrelated to the subject accident. *See* Doc. 26-1 and Doc. 53-1 at 10.

On or about April 8, 2024, Defendants filed their First Notice of Fault of a Non-Party, wherein Defendants provided notice and requested the Court to instruct the trier of fact, in assessing percentages of fault, to assess and consider the percentages of fault of Dr. Puppala for deviating from the standard of care by

performing unnecessary treatments, causing substantial damage to Plaintiff's physical wellbeing, including causing a spinal infection, which resulted in permanent damages to Plaintiff, and which required additional treatment unrelated to the subject incident. Doc. 39.

On or about August 14, 2024, Defendants filed their Second Notice of Fault of a Non-Party, wherein Defendants provided notice and requested the Court to instruct the trier of fact, in assessing percentages of fault, to assess and consider the percentages of fault of Dr. Badday for deviating from the standard of care by failing to identify the features of discitis, causing substantial damage to Plaintiff's physical wellbeing, including causing the development of a significant spinal infection, which resulted in permanent damages to Plaintiff, which required additional treatment unrelated to the subject accident. Doc. 61.

On or about August 16, 2024, Plaintiff filed his objection to both of the aforementioned notices of non-party fault filed by Defendants. Doc. 65. In his objection, Plaintiff, without citing to any supporting case law, statutes, or facts in the record, requested that Court deny that both of Defendants' notices of non-party fault. *Id*. To support his objection, which again is baseless both legally and factually, Plaintiff essentially argues that it was foreseeable that two treating physicians would deviate from the standard of care and perform unnecessary surgeries and/or

procedures on an unaffected region of Plaintiff's spine. *Id*. He goes on to say that Defendants "recklessly accuse[d]" Dr. Badday of violating the medical standard of care because "[d]iscitis is an uncommon medical diagnosis and is often accompanied by fever" despite the fact that multiple experts have testified (or will testify) that the discitis was observable in Plaintiff's medical imaging taken shortly after Dr. Puppala's reckless procedure. *Id*. at ¶ 5. Furthermore, Plaintiff's unsupported contention that discitis "usually involves a fever" is hearsay, unsupported by the record, and has no probative value whatsoever.

As will be discussed further below, prior Eleventh Circuit decisions, including rulings from this Court, do not support Plaintiff's position.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Legal Standard

O.C.G.A. § 51-12-33(d) requires defendants who wish to have the negligence or fault of a nonparty considered by the trier of fact to "give[] notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." However, federal courts in Georgia have held that the notice requirement does not negate Federal Rule of Civil Procedure 8(c)'s requirement that all affirmative defenses be expressly stated in a defendant's answer. Garvin v. TransAm Trucking, Inc., No. CV422-062, 2024 U.S. Dist. LEXIS 72983, at *6 (S.D. Ga. Apr. 22, 2024).

However, failure to comply with Rule 8(c) does not cause the plaintiff any prejudice when a plaintiff has been put on notice. Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988).

When assigning fault to a non-party, the party moving to assign fault to a non-party bears the burden of proving that the non-party breached a legal duty in the nature of a tort that was owed to the plaintiff and that said breach was the proximate cause of his injury. Gavin at *12; *see also* Zaldivar v. Prickett, 297 Ga. 589, 774 S.E.2d 688, 694 (Ga. 2015) (defining "fault" under O.C.G.A. § 51-12-33(c)); *see also* Dennis v. D*F Equipment Sales, Inc., 2016 U.S. Dist. LEXIS 89187, 2016 WL 3753085, at *2 (M.D. Ga. Jul. 11, 2016).

**a. Defendants Have Properly Placed Plaintiff on Notice of Their Intent to Apportion Fault to Dr. Puppala and Dr. Badday**

Defendants timely placed Plaintiff on notice their intent to assign fault to Dr. Puppala and Dr. Badday. O.C.G.A. § 51-12-33(d)(1) requires that Defendants give notice "not later than 120 days prior to the date of trial" that they intend to apportion fault to a non-party. Here, Defendants have provided timely notice to Plaintiff of their intent to assign fault to Dr. Puppala and Dr. Badday. On August 15, 2024, this Court entered an order extending the discovery deadline until October 15, 2024, dispositive motions to be filed by November 15, 2024, and a Consolidated Pre-Trial

Order due by December 15, 2024. Doc. 63. Seeing as Defendants filed their most recent notice on August 14, 2024 and the Consolidated Pre-Trial Order would be due ***123 days after*** the filing, it is evident that Defendants have met the requirements set forth in O.C.G.A. § 51-12-33(d)(1).

Defendants have also met the requirements of O.C.G.A. § 51-12-33(d)(2), which requires that notice shall be given by filing a pleading in the action setting forth the nonparty's name and last known address, together with a brief statement of the basis for believing the nonparty to be at fault. In Defendants' First and Second Notice, Defendants complied with the requirements of O.C.G.A. § 51-12-33(d)(2) by placing the names and addresses of both Dr. Puppala and Dr. Badday, along with a brief statement of the basis for believing them to be at fault. Doc. 39, 61.

Furthermore, Defendants contend they have sufficient evidence to present to a jury which is capable of proving that Dr. Puppala and Dr. Badday breached their legal duties to Plaintiff by violating their respective standards of care. Zaldivar, 297 Ga. 589. As Dr. Ouanounou testified, he believes Dr. Puppala's unnecessary surgery on Plaintiff's thoracic region caused a severe spinal infection and constitutes malpractice:

> Q: Do you have an opinion on any of the medical treatment that was given to my client?
> **A: For which – for which case? For what part of it? What part of the spine?**

> Q: For his cervical, thoracic, or lumbar spine?
> **A: I have an issue with the thoracic spine.**
> Q: Thoracic spine?
> **A: Yeah.**
> Q: And what issue do you have with the thoracic spine?
> **A: Honestly, I think there's malpractice in the thoracic spine region, unfortunately. It was unnecessary, one. There was nothing to go after and, unfortunately, that led to an infection – a serious infection.**

Dr. Ouanounou Depo., at 17:14-25, 18:1-5. Per his report, defense expert, Dr. Heller, who has not yet been deposed[1], is anticipated to testify that both Dr. Puppala and Dr. Badday deviated from the appropriate standard of care. Doc 53-1. Specifically, in his report, Dr. Heller stated that Dr. Badday deviated from the appropriate standard of care by carelessly interpreting and reporting medical images of Plaintiff's thoracic spine to include a disc herniation when "[t]here simply never were any 'disc herniations'…" Doc. 53 at 9. Dr. Heller further stated that Dr. Puppala did not independently review the medical images Dr. Badday interpreted and reported as Dr. Puppala would have "had to appreciate the lack of a disc herniation, and hence the clear contraindication to the DiscFX procedure" he would later perform on Plaintiff which then caused Plaintiff to suffer a severe spinal infection. *Id*. Lastly, Dr. Heller stated that both Dr. Puppala and Dr. Badday deviated from the

[1] Dr. Heller's deposition has been noticed for September 16, 2024. Doc. 59.

standard of care by failing to appreciate the evident discitis seen on a subsequent medical image taken of Plaintiff's thoracic spine. *Id*. at 10.

In sum, not only did Defendants provide ample notice, but have also presented to the Court the merits and basis of their apportionment argument pursuant to O.C.G.A. § 51-12-33(d)(1) and (d)(2).

To the extent that Plaintiff attempts to argue that Defendants did not raise an affirmative defense regarding apportionment of fault to non-parties, Defendants argument still stands. The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350, 91 S. Ct. 1434, 1453, 28 L. Ed. 2d 788 (1971); *see also* Hassan at 263. "When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." Hassan at 263. And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue. Hassan at 263; *see also* Bull's Corner Restaurant v. Director of the Federal Emergency Management Agency, 759 F.2d 500, 502 (5th Cir. 1985); Jones v. Miles, 656 F.2d 103, 107 n. 7 (5th Cir. Unit B 1981) ("Failure to affirmatively plead the defense is simply noncompliance with a

technicality and does not constitute a waiver where there is no claim of surprise.") (dicta) (citation omitted).

Here, as discussed above, it is evident that there is no risk of prejudice to Plaintiff regarding Defendants intent to apportion fault to Dr. Puppala and Dr. Badday. At this point, it will be ***at least*** 123 days since the filing of Defendants' second notice until the Consolidated Pre-Trial Order is due. Defendants reasonably anticipate that even more time will pass until trial begins. Furthermore, Defendants will be supplementing their discovery responses and disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.

Given the above, any claim by Plaintiff of "surprise" would be baseless as Defendants have provided timely notice with a clear factual basis for the non-party fault pursuant to O.C.G.A. § 51-12-33(d)(1) and (d)(2).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court strike Plaintiff's Objection to Defendants' First and Second Notice of Fault of Non-Party.

This 28th day of August, 2024.

[*Signature Below*]

**Quintairos, Prieto, Wood & Boyer, P.A.**

*/s/ Gabriel Logreira*
SCOTT H. MOULTON
Georgia State Bar No. 974237
SANDRO STOJANOVIC
Georgia State Bar No. 473114
FOSS BAKER
Georgia State Bar No. 296402
GABRIEL LOGREIRA
Georgia State Bar No. 881117
*Counsel for Defendants*

365 Northridge Road
Suite 230
Atlanta, GA 30350
T: (770) 650-8737
F: (770) 650-8797
scott.moulton@qpwblaw.com
sandro.stojanovic@qpwblaw.com
foss.baker@qpwblaw.com
gabriel.logreira@qpwblaw.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DORION HOLBROOK<br><br>Plaintiffs,<br><br>v.<br><br>DARRELL JAMES GABRIEL, WERNER ENTERPRISES, INC., and JOHN DOE CORPORATIONS 1-3,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>1:23-cv-04740-TWT |

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I have served a copy of the within and foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTION TO DEFENDANTS' NOTICE OF FAULT OF A NON-PARTY** upon all parties to this matter via electronic notification to the following:

Daniel J. Saxton
Jean-Paul Brunache
1995 North Park Place SE, Suite 207
Atlanta, Georgia 30339
djsaxton@saxtonfirm.com
jpbrunache@saxtonfirm.com

This 28th day of August, 2024.

**Quintairos, Prieto, Wood & Boyer, P.A.**

*/s/ Gabriel Logreira*

SCOTT H. MOULTON
Georgia State Bar No. 974237
SANDRO STOJANOVIC
Georgia State Bar No. 473114
FOSS BAKER
Georgia State Bar No. 296402
GABRIEL LOGREIRA
Georgia State Bar No. 881117
*Counsel for Defendants*

365 Northridge Road
Suite 230
Atlanta, GA 30350
T: (770) 650-8737
F: (770) 650-8797
scott.moulton@qpwblaw.com
sandro.stojanovic@qpwblaw.com
foss.baker@qpwblaw.com
gabriel.logreira@qpwblaw.com