IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DORION HOLBROOK, et al.,

    Plaintiffs,

    v.

DARRELL JAMES GABRIEL, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4740-TWT

**OPINION AND ORDER**

    This is a personal injury action. It is before the Court on Defendants Darrell James Gabriel and Werner Enterprises, Inc.'s ("Werner") Motion for Summary Judgment [Doc. 76]. For the reasons set forth below, Defendants Gabriel and Werner's Motion for Summary Judgment [Doc. 76] is GRANTED in part and DENIED in part.

### I. Background[1]

    This case arises from a motor vehicle accident between Plaintiff Dorion Holbrook and Defendant Darrell James Gabriel that occurred in Fulton County on August 10, 2022. The record contains a partial recording of the events leading to the incident. (*See generally* Br. in Supp. of Defs.' Mot. for Summ. J.,

---

[1] The operative facts on the Motion for Summary Judgment are taken from the Defendants' Statement of Undisputed Material Facts. The Plaintiff did not file a response. The Court will deem the factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Ex. J ("Dash Cam") [Doc. 77].) Defendant Gabriel arrived at an intersection with the intention of turning left. (Defs.' Statement of Undisputed Material Facts ¶ 1 [Doc. 76-1].) Plaintiff Holbrook was stopped at the same intersection but facing the opposite direction with a red light. (Holbrook Dep. at 17:17–18 [Doc. 76-4].) Once Holbrook received a green light, he proceeded forward. (*Id.* at 17:19.) At roughly the same time, however, Gabriel proceeded to complete his left turn. (*See* Dash Cam, at 0:02–0:06; Defs.' Statement of Undisputed Material Facts ¶ 2.) As Gabriel turned, he had a green light but not a protected left turn. (Dash Cam, at 0:00–0:02.) Gabriel's left-turning vehicle and the Holbrook's forward-moving vehicle collided in the intersection. (*See* Defs.' Statement of Undisputed Material Facts ¶ 2.)

Holbrook alleges negligence and negligence per se as to Defendant Gabriel, and he alleges vicarious liability and negligent hiring and supervision as to Gabriel's employer at the time, Defendant Werner Enterprises, Inc.[2] Holbrook requests damages for his medical expenses, lost wages, pain and suffering, and loss of consortium. (Compl., at 12–13 [Doc. 1-1].) He also requests punitive damages and attorney's fees. (*Id.* at 13.) The parties dispute the role that his doctor's supposed malpractice played in worsening his injuries

---

[2] The Complaint also contains a direct action claim (Count IV) against ACE American Insurance Co., but the parties have since stipulated to the dismissal of the company [Doc. 33].

and thus in increasing his damages.

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Despite the Plaintiff's lack of opposition to some aspects of the present Motion, the Court "cannot base the entry of summary judgment on the mere fact that the motion [i]s unopposed, but, rather, must consider the merits of the motion." *United States v. 5800 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits, the Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.*

### III. Discussion

#### A. Negligence (Count I) and Negligence Per Se (Count II) as to Defendant Gabriel
##### 1. Whether Holbrook's "Assumption" and Failure to Evade Caused the Incident

To establish a claim for negligence in Georgia, a plaintiff must establish the existence of a legal duty, a breach of that duty, causation, and damages. *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 557 (2019) (citation omitted). To establish a claim for negligence per se, a plaintiff must establish that "a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against." *Murphy v. Bajjani*, 282 Ga. 197, 200 (2007) (citation omitted).

The Defendants seek summary judgment on both the negligence and negligence per se claims. According to the Defendants, "[a] driver has no right to assume that the road ahead of him is clear of traffic, and it is his duty to maintain a diligent outlook ahead." (Br. in Supp. of Defs.' Mot. for Summ. J., at 10 [Doc. 76-2] (quoting *Hayes v. Crawford*, 317 Ga. App. 75, 78 (2012).) That duty is breached when a driver "is able to reasonably ascertain that he is about to be involved in a collision and 'nevertheless takes no reasonable evasive action where possible.'" (*Id.* (quoting *McKissick v. Giroux*, 272 Ga. App. 499, 500 (2005).) The Defendants argue that Holbrook's claims fail because he admits his actions were merely based on "assumption[s]" that the road was

4

clear and that Gabriel had a red light. (*Id.* at 12; *id.* at 10 ("Plaintiff admits that he *assumed* Defendant Gabriel was going to stop and [ ] *assumed* that Plaintiff could proceed through the intersection.").) Therefore, the Defendants contend, Holbrook's "admitted assumption is the cause of his own damages," rather than Gabriel's supposed negligence. (*Id.* at 10.) To further support their argument, the Defendants contend that *McQuaig v. Tarrant*, 269 Ga. App. 236 (2004), considered similar facts and held that "[Plaintiff] was obligated to wait until she could see whether traffic had cleared before she drove into the intersection." (Br. in Supp. of Defs.' Mot. to Dismiss, at 11 (quoting *McQuaig*, 269 Ga. App. at 238).)

Ultimately, the Court denies the Defendants' Motion for Summary Judgment on Counts I and II. Although Gabriel "had a green light," (*id.* at 12), he did not have the right of way, as he did not have a protected left turn, (*see* Dash Cam, at 0:00–0:02.) Gabriel was turning left and was required to yield to incoming traffic. O.C.G.A. § 40-6-97 ("The driver of a vehicle intending to turn to the left within an intersection . . . shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."). Holbrook's testimony that he "assumed" Gabriel would yield does not automatically mean Holbrook was at fault or otherwise caused the accident. He had the right to assume as much.

5

The Defendants' reliance on *McQuaig* to argue the opposite is misplaced. *McQuaig* found that the vehicle moving forward through the intersection with the right of way "was entitled to assume that [the left-turning vehicle] would obey the rules of the road and yield the right of way even though she saw [the left-turning] vehicle approaching." 269 Ga. App. at 238. And it further found that the vehicle turning left—*not the vehicle moving forward with the right of way*—"was obligated to wait until she could see whether traffic had cleared before she drove her car into the intersection." *Id.* It appears that the Defendants mixed up the parties in their read of the case.[3]

More important than whether Holbrook was entitled to assume left-turning vehicles would yield is whether Holbrook and Gabriel "exercise[d] ordinary care under the facts and circumstances of the situation." *Hite v. Anderson*, 284 Ga. App. 156, 158 (2007) (citations omitted); *see also Hayes*, 317 Ga. App. at 78 (referring to a "duty to maintain a diligent outlook ahead"). And, on this point, the facts appear disputed. Specifically, the parties dispute

---

[3] In *McQuaig*, a plaintiff passenger sued two drivers, Ethel Hall and Tatum Tarrant, for their combined negligence in causing a car accident. Tarrant moved for summary judgment, arguing that "Hall's negligence was the sole proximate cause of the collision." *McQuaig*, 269 Ga. App. at 236. The Georgia trial court granted the motion, and the Georgia Court of Appeals affirmed. *Id.* Hall was driving east and arrived at an intersection with a stop sign instructing those on Hall's east-west road to yield to traffic on the north-south road. Hall believed she had clearance to turn left and began to do so, when Tarrant's southbound vehicle collided into her vehicle. *Id.* at 236.

whether Holbrook attempted or could have attempted to slow down or veer away to avoid the collision. (*Compare* Defs.' Statement of Undisputed Material Facts ¶¶ 4–5, *with* Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. at 5 [Doc. 81].) The Defendants point to Holbrook's testimony, arguing that he "admits that he did not even attempt to hit his brakes prior to his collision." (Defs.' Statement of Undisputed Material Facts ¶ 4.) In response, Holbrook points to other testimony where he responded, "I started to slow down and swerve away from the trailer," when asked if he saw the tractor trailer begin to turn left.[4] (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 5 (quoting Holbrook Dep.[5] at 22).) There is no other evidence that Holbrook otherwise acted improperly by, for example, speeding through the intersection. *See McQuaig*, 269 Ga. App. at 237; *see also id.* at 238 (describing cases where individuals drove unreasonably fast for the weather conditions). In light of all the above, the Court finds that a genuine dispute of material fact exists as to whether Holbrook could have avoided or did attempt to avoid the collision. *See McKissick*, 272 Ga. App. at 500 (noting that drivers breach their duty to

---

[4] Holbrook did not formally file responses to the Defendants' Statement of Undisputed Material Facts. That being said, the Court deems Holbrook's statements in his response brief regarding whether he braked or swerved as sufficient to "directly refute[ ]" the facts presented by the Defendants under Local Rule 56.1(B)(1)(i).

[5] Holbrook's response brief mistakenly cites Gabriel's deposition, but he clearly meant to cite his own deposition given the quote and page number provided.

7

exercise ordinary care if they determine a collision is imminent but take "no reasonable evasive action where possible" (citing *Johnson v. Ellis*, 179 Ga. App. 343, 344–45 (1986))).

### 2. Whether Holbrook's Medical Care Breaks the Chain of Causation

Following the motor vehicle incident, an ambulance transported Holbrook to "WellStar,"[6] where he received a CT scan, pain medication, and a referral for further treatment. (Holbrook Dep. at 28:12–21.) Shortly thereafter, he began receiving certain "injections" at the NextGen Medical Centers[7] for reported pain in his back, shoulder, and knee, and he also began visiting a chiropractor at the Relief and Rehab Center of Atlanta. (*Id.* at 33:22–34:8.) Holbrook's doctors additionally referred him to a clinic called Comprehensive Spine & Pain, where he received treatment from Dr. Vinaya K. Puppala. (*Id.* at 35:12–37:3; Defs.' Statement of Undisputed Material Facts Statement ¶ 13.) As part of the treatment, Dr. Puppala performed certain surgical procedures on Holbrook's spine. (*See, e.g.*, Heller Dep. at 24:14–25:4, 31:4–32:15, 38:18–39:17.) As a result of the surgery, Holbrook later developed a spinal infection in his thoracic (middle) spine, which required additional treatment. (*See id.* at 33:24–34:7, 41:5–13; Defs.' Statement of Undisputed Material Facts ¶ 16.)

---

[6] "WellStar" appears to refer to Wellstar Atlanta Medical Center, though it is not entirely clear from the record.
[7] The Court notes that the correct spelling may be "NexGen," despite the available record.

To establish causation in a negligence action, a plaintiff must establish that the defendant's negligence was a but-for and proximate cause of the plaintiff's injuries. *Ware v. Jackson*, 357 Ga. App. 470, 476 (2020). In Georgia, that chain of causation includes "'all of the natural and probable consequences' of an action 'unless there is a *sufficient and independent* intervening cause.'" *Principle Sols. Grp., LLC v. Ironshore Indem., Inc.*, 944 F.3d 886, 892 (11th Cir. 2019) (quoting *Cowart v. Widener*, 287 Ga. 622, 627–28 (2010)). "An intervening cause is not sufficient and independent if 'its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer.'" *Id.* (quoting *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 842 (2017)). Georgia courts have found that the "reasonably foreseeable consequence[s]" of a defendant's initial tortious act may include "the negligent conduct of a treating physician." *City of Coll. Park v. Fortenberry*, 271 Ga. App. 446, 447 (2005) (collecting cases). And in *Coleman v. Atlanta Obstetrics & Gynecology Group, P.A.*, 194 Ga. App. 508 (1990), the Georgia Court of Appeals specifically stated: "A negligent actor is liable not only for the injury caused by his own acts but is also liable for any additional harm resulting from the manner in which reasonably required medical services are rendered." *Id.* at 510.

Here, the Defendants appear to contend that Dr. Puppala's treatment was medically unnecessary and fell so below the standard of care that it

9

constitutes a sufficient and independent intervening act. (Br. in Supp. of Defs.' Mot. for Summ. J., at 3–4.) As a result, they move for summary judgment to exclude from damages Holbrook's treatment by Dr. Puppala and the treatment for the subsequent spinal infection. (*Id.* at 15.) To support their argument, the Defendants cite testimony from Dr. John G. Heller in which he attributes at least the following errors to Dr. Puppala: (1) inappropriate treatment of the cervical (upper) spine; (2) an inaccurate finding that there was a disc herniation in the lumbar (lower) spine followed by an unnecessary procedure in that area; (3) an inaccurate finding that there was a disc herniation in the thoracic spine followed by a unnecessary procedure in that area; and (4) failure to diagnose Holbrook's subsequent infection in the thoracic (middle) spine. (*See* Heller Dep. at 38:21–39:17.) In response, Holbrook cites testimony from Dr. Puppala to argue that the treatment was within the appropriate standard of care. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 7 (citing Puppala Dep. at 50 [Doc. 87-1]).)

    The Court denies summary judgment as to excluding the alleged damages from Dr. Puppala's treatment and the additional treatment for the subsequent spinal infection. First, there are genuine disputes of material fact as to whether all or part of Dr. Puppala's treatment was reasonably medically necessary and whether that treatment was performed with appropriate care. For example, Dr. Heller opines that both the surgery on the thoracic spine and

10

the lumbar spine were medically unnecessary because there was no underlying disc herniation in these areas, (*see* Heller Dep. at 38:24–39:3), while Dr. Puppala appears to opine that both were reasonably necessary due to disc herniations and reported pain as well as "new[ ] literature" about the benefits of "addressing multiple regions" of the spine, (*see* Puppala Dep. at 40:5–41:10, 49:20–50:11; *see also id.* at 38:12–13 ("I always reevaluate patients [ ] prior to any planned procedure[ ] [t]o ensure that it's still medically necessary.")). Additionally, while not cited by either party, Dr. Serge Ouanounou's testimony further complicates the discussion, as he seems to opine that there was a "'tiny' disc protrusion in the thoracic spine but that Dr. Puppala's thoracic surgery remained medically unnecessary and beyond the appropriate standard of care. (*See* Ouanounou Dep. at 24:23–25:18, 17:21–18:5 [Doc. 67].) Dr. Ouanounou also appears to opine that the lumbar surgery could have been medically appropriate if Holbrook was diagnosed with "lumbar radiculopathy," as he was in this case. (*See id.* at 42:8–43:7.) For all the above reasons, weighing the opinions and credibility of these physician witnesses is a task best assigned to a jury.

### B. Imputable Negligence (Count III)

In Count III, Holbrook alleges Defendant Werner's vicarious liability for Defendant Gabriel's conduct during the incident and appears to allege an independent claim for Werner's negligent hiring and supervision of Gabriel.

11

The Defendants do not appear to seek summary judgment regarding the vicarious liability theory, but they do seek summary judgment on the claim of negligent hiring and supervision. Holbrook does not present any evidence regarding his original allegations and instead affirmatively states he does not contest the Defendants' arguments. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 8.)

The Court grants summary judgment on the negligent hiring and supervision claim. Gabriel received a commercial driver's license in 2008 and has been employed as a truck driver from 2008 until at least October 2024. (Defs.' Statement of Undisputed Material Facts ¶ 2.) Gabriel began working for Werner in 2011. (*Id.*) He testified that he received one moving citation (for speeding) in 2015 and has "not [been] involved in any other collision other than the one that [is] the subject of this lawsuit." (*Id.*) Following the present incident, Werner put Gabriel on probation for thirty days. (*Id.*) Based on the foregoing, undisputed facts, the Court finds that Werner was not negligent in hiring, training, or supervising Gabriel. Gabriel's record does not rise to the level of showing "dangerous propensities" or otherwise showing he was "not accustomed to act with due care," as would be required for this claim. *See TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 459 (2003) (citation omitted).

### C. Punitive Damages (Count V)

The Defendants argue that Holbrook has failed to provide evidence to

12

support his request for punitive damages. (Br. in Supp. of Defs.' Mot. for Summ. J., at 22.) The Court agrees and notes that Holbrook does not contest this point either. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 8.) In Georgia, a plaintiff in a tort action may be properly entitled to punitive damages where there is "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Mere negligence," as is alleged here, "is not enough to support a claim for punitive damages." *Lindsey v. Clinch Cnty. Glass, Inc.*, 312 Ga. App. 534, 536 (2011) (citing *Brooks v. Gray*, 262 Ga. App. 232, 232 (2003)). The Court thus grants the Defendants' Motion for Summary Judgment as to Holbrook's request for punitive damages in Count V.

### D. Attorney's Fees

The Defendants argue that Holbrook failed to adequately plead his request for attorney's fees. (Br. in Supp. of Defs.' Mot. for Summ. J., at 23–26.) Holbrook again does not contest this point. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. for Summ. J., at 8.) The Court agrees with the Defendants: Holbrook includes his request for attorney's fees as a line in his prayers for relief, but he does not specifically plead (or provide evidence) that the Defendants "ha[ve] acted in bad faith, ha[ve] been stubbornly litigious, or ha[ve] caused the

13

plaintiff unnecessary trouble and expense." *See* O.C.G.A. § 13-6-11. The Court therefore grants summary judgment to the Defendants as to attorney's fees.

### IV.   Conclusion

For the foregoing reasons, Defendants Darrell James Gabriel and Werner Enterprises, Inc.'s Motion for Summary Judgment [Doc. 76] is GRANTED in part and DENIED in part. The Motion for Summary Judgment is granted as to the negligent hiring and supervision claim (Count III), punitive damages (Count V), and attorney's fees, but it is denied as to all other relief requested therein.

SO ORDERED, this  5th  day of May, 2025.

                                                    THOMAS W. THRASH, JR.
                                                    United States District Judge